UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BILLY HAROLD CRUDUP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:23-CV-00167 ACL |
| ) | |
| BILL STANGE, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the motion of self-represented plaintiff Billy Crudup for leave to commence this civil action without prepayment of the required filing fee. [ECF No. 2]. The Court will grant the motion and assess an initial partial filing fee of $151.89. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will give plaintiff the opportunity to file a second amended complaint, and will deny, at this time, his motion seeking the appointment of counsel.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court

each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint and amended complaint. A review of plaintiff's account indicates an average monthly deposit of $23.33, and an average monthly balance of $759.46. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $151.89, which is 20 percent of plaintiff's average monthly balance.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court

should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint, Supplemental Complaint and Amended Complaint

Plaintiff filed the instant action on September 25, 2023, pursuant to 42 U.S.C. § 1983. [ECF No. 1]. At all times relevant to the allegations in his complaint, plaintiff appears to have been incarcerated at Southeast Correctional Center (SECC). In plaintiff's original complaint, plaintiff named six defendant correctional officers at SECC and the Missouri Department of Corrections (MDOC) as defendants in this action: (1) Phillip Dobbs[1]; (2) Pierce Yount; (3) Yolanda Farmer; (4) Bill Stange; (5) Anne Precythe; and (6) Jason Lewis. He sued defendants in their individual and official capacities.

In plaintiff's original complaint, ECF No. 1, he brings claims of excessive force and failure to intervene in violation of the Eighth Amendment. It is difficult to discern if plaintiff is also attempting to bring claims relating to his placement in Administrative Segregation or not.

Plaintiff asserts that on October 17, 2022, after breakfast, between approximately 7:40 a.m. and 8:10 a.m. he was returning to his housing unit. He claimed to have been in his cell no later than 8:30 a.m. Although plaintiff was purportedly on "Living Area Restriction," he was allegedly allowed to attend school.

---

[1] In plaintiff's supplemental complaint plaintiff asserts that defendant Phillip Dobbs is now a former employee at SECC.

3

In his original complaint, plaintiff explained that when "window movement" was called at 8:30 a.m. and offenders were allowed to leave their cells to disburse to activities, his cellmate exited the cell to allow him to use the restroom. By this time, plaintiff estimated the time to be approximately 8:39 a.m.

Plaintiff claims that when he attempted to exit his housing unit to go to school, the sallyport exit door was closed and locked. He asked the control room officer, Ms. Powell, to unlock the exit door, but plaintiff claims that Powell ignored him. At some point Powell asked him what he was doing. When he told her he was attempting to go to class, Powell told him he could not go to class because his wing was now in lockdown. He again asked Powell to open the door so he could attend school, but she again replied no. When plaintiff told her he had been waiting since the "window opened," Powell replied that it had nothing to do with her. Plaintiff claims that at some point, Correctional Officer Dobbs intervened and said, "You are not allowed to leave because the window is closed." At that moment, plaintiff overhead on the walkie talkie the central control commander announce, "window closed, window is now closed."

Plaintiff then said, "See, look, ya'll at fault for me missing the window! They just announced window closed. Ya'll making me late for school. Ya'll trying to get me a CDV for not being at school. I was waiting at the door and you wouldn't open the door. How am I at fault?! I just wanna go to school, Ms. Powell, can you please open the door so I can go to school, Ms. Powell?

At this point, Ms. Powell opened the door, and plaintiff exited the building; however, Dobbs came out of the control center and blocked plaintiff's path, giving him a directive to go back inside the building and lockdown. Plaintiff purportedly told Dobbs, "Ms. Powell just let me out so I can go to school. Why are you messing with me dude? Plaintiff claims Dobbs got in his

4

personal space and said, "No you can't go to school! The window is now closed, lockdown." Plaintiff said, "You just want me to be dumb."

Plaintiff asserts that during the 9:30 a.m. window that day, Dobbs entered 3C Wing and opened his cell door and told him to come to the back office. Waiting in the office was security Officer Pierce Yount who read him a conduct violation. Plaintiff tried to explain to Yount he was supposed to be in school, but Yount would not listen to his explanation. He then went to Ms. Farmer, his case manager, to tell her that Yount was "messin with him." After Yount was done reading the violation, he told plaintiff to return to his cell and lockdown. Plaintiff claims that he noticed that the time was still the 9:30 a.m. window movement time, so he turned to ask Yount if he could go to school. When he turned, he was allegedly hit from behind, which caused plaintiff to "protect and defend himself."

Plaintiff asserts that Dobbs hit him without provocation in a martial arts hip toss, climbed on top of him to hold him down, while Yount pinned his arms to the floor. At that point, plaintiff alleges that Dobbs hit him in the face, causing the back of his head to hit the floor. Eventually, plaintiff claims he was knocked unconscious. When he "came to" he was still being punched by Dobbs. He was then turned over, hands behind his back, handcuffed, when Farmer ran over and sprayed him in the face with mace. Plaintiff states that Yount should have intervened in Dobbs' excessive force against him, but he failed to do so.

Plaintiff alleges he was then taken to a security bench at H.U.2 Sallyport area and secured there. He claims that Dobbs' fiancé, Emily Aether, a nurse, walked by him and would not assess his injuries.[2] Plaintiff asserts that he was given two conduct violations for the incident, placed in

---

[2]Plaintiff has not named Aether as a defendant in this action or made any allegations of deliberate indifference to his serious medical needs under the Eighth Amendment.

Administrative Segregation for a long period of time, given sixty (60) days of no visitations and referred to prosecution/placed under arrest because he "defended himself" with one punch.

On October 17, 2023, plaintiff filed a motion to amend his complaint. Attached to his motion to amend is an affidavit from fellow inmate Lamont Williamson, as well as two pages plaintiff would like to attach to his complaint by interlineation in which he submits claims against defendants for denying his grievances. The Court does not accept amendments by interlineation. *See Popoalii v. Correctional Medical Services*, 512 F.3d 488, 497 (8th Cir.2008) (finding that it is appropriate to deny leave to amend a complaint when a full proposed amendment was not submitted with the motion). Additionally, the Court does not accept discovery documents. Rather, if a plaintiff wishes to produce discovery to the Court, he can only do so by attachment an affidavit or deposition testimony to a summary judgment motion or a motion for judgment on the pleadings. *See* Fed.R.Civ.P.7(a); Local Rule 3.02(A). As such, his motion to amend will be denied.

For relief, plaintiff seeks monetary damages.

**Discussion**

Having thoroughly reviewed and liberally construed plaintiff's original, supplemental and amended complaint, the Court concludes the complaint is subject to dismissal. However, in consideration of plaintiff's self-represented status, the Court will allow him to submit a second amended complaint.

A. **Official Capacity Claims**

Plaintiff has sued defendants in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018)

(explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, all defendants are alleged to be employees of the Missouri Department of Corrections. As such, the official capacity claims against them are actually claims against the State of Missouri itself, their employer. The claims against them in their official capacities fail for two reasons.

### i. State is Not a 42 U.S.C. § 1983 "Person" in a Claim for Money Damages

First, to the extent that plaintiff seeks money damages, the State of Missouri is not a 42 U.S.C. § 1983 "person." "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Because plaintiff is missing an essential element of a § 1983 action, his claim for money damages against the State of Missouri must be dismissed.

**ii. Sovereign Immunity Bars Claim for Money Damages**

Second, sovereign immunity also protects the State of Missouri from plaintiff's claims for money damages. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). Sovereign immunity also bars a claim for money damages against a state official sued in an official capacity. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id.* The second exception is when a state waives its immunity to suit in federal court. *Id.* at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.,* 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment

8

immunity from suit in federal court. *See Will,* 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception does not apply because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property"). For this reason as well, plaintiff's claim for money damages against the State of Missouri must be dismissed. For all of these reasons, plaintiff has not demonstrated the liability of the State of Missouri.

    **B.  Individual Capacity Claims**

Plaintiff alleges defendants have also violated his rights in their individual capacities. However, he has not alleged claims against defendants Jason Lewis, Anne Precythe, or Bill Stange. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). It is not enough for defendants to have supervisory authority over SECC or MDOC for the Court to construe their personal involvement in all of plaintiff's claims of alleged constitutional violations. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983). Because plaintiff does

not provide any facts related to the personal involvement of defendants Precythe, Lewis or Stange, as to each allegation, the claims against them are subject to dismissal.[3]

Furthermore, plaintiff's claims related to excessive force against Dobbs, Yount and Farmer may not be able to state a claim for relief as currently stated. The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). *See also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). *See also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between

---

[3] Even if plaintiff was attempting to allege that these defendants were liable to him because they denied his grievances or grievance appeals, his claims would be subject to dismissal. An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). *See also Jenner v. Nikolas*, 828 F.3d 713, 716-17 (8th Cir. 2016) (explaining that "[t]he existence of a state-mandated procedural requirement does not, in and of itself, create a constitutionally protected liberty interest"). To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

In this case, plaintiff admits that he was fighting back against Yount, Dobbs and Farmer, and that in fact, he was criminally prosecuted as a result of the altercation. As noted above, guards are only considered at fault in excessive force cases if they were completely unjustified in using force. If plaintiff, himself admits that he also used force to fight back, he may have a difficult time in proving excessive force in this action.[4]

Similarly, although unclear, to the extent plaintiff believes he is asserting a claim regarding his placement in Administrative Segregation, he has not alleged a an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Nonetheless, because plaintiff is a self-represented litigant, and because he has made serious allegations, the Court will not dismiss the complaint and supplemental documents at this time. Instead, plaintiff will be given the opportunity to amend his pleadings according to the instructions set forth below. In preparing his second amended complaint, plaintiff must follow these instructions. Failure to follow these instructions may result in the dismissal of his claims.

### Amendment Instructions

Plaintiff is warned that the filing of an amended complaint completely replaces the original complaint so it must include all claims plaintiff wishes to bring. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect"). Plaintiff must type or neatly print the amended complaint on the Court-provided prisoner

---

[4]Furthermore, to show a failure to intervene claim, a plaintiff must show that the officer knew that excessive force was being used.

civil rights complaint form, which will be provided to him. *See* E.D. Mo. L.R. 45 – 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms"). Plaintiff must not amend a complaint by filing separate documents. Instead, he must file a single, comprehensive pleading that sets forth his claims for relief.

In the "Caption" section of the complaint form, plaintiff must state the first and last name, to the extent he knows it, of each defendant he wishes to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, plaintiff may include additional sheets of paper. However, all the defendants must be clearly listed. Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both. Plaintiff should avoid naming anyone as a defendant unless that person is directly related to his claim(s). Plaintiff should put his case number in the appropriate location on the upper right-hand section of the first page.

In the "Statement of Claim" section, plaintiff should begin by writing a defendant's name. In separate, numbered paragraphs under that name, plaintiff should: (1) set forth a short and plain statement of the factual allegations supporting his claim against that defendant; and (2) state what constitutional or federal statutory right(s) that defendant violated. Each averment must be simple, concise, and direct. *See* Fed. R. Civ. P. 8(a). If plaintiff is suing more than one defendant, he should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the factual allegations supporting his claim or claims against that defendant. No introductory or conclusory paragraphs are necessary.

Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may choose a single defendant, and set forth as many claims as he has against him or her. *See* Fed. R. Civ. P. 18(a).

Plaintiff's failure to make specific factual allegations against any defendant will result in that defendant's dismissal. Plaintiff must allege facts connecting each defendant to the challenged action. *See Martin*, 780 F.2d at 1338 (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits); *Keeper*, 130 F.3d at 1314 (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983). "A federal complaint must contain the 'who, what, when and where' of what happened, and each defendant must be linked to a particular action." *Drummer v. Corizon Corr. Health Care*, 2016 WL 3971399, at *1 (E.D. Mo. July 25, 2016); *see e.g., Miles v. Corizon Healthcare*, 2019 WL 2085998, at *4 (E.D. Mo. May 13, 2019) (a general refusal to treat allegation, without any additional information, is nothing more than a conclusory statement and cannot suffice to state a cause of action under the Eighth Amendment).

Plaintiff must also be careful to fill out the Court-provided complaint form in its entirety, including the "Injuries" section. There is no constitutional violation where an inmate cannot show he suffered an injury or adverse health consequence. *See Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995). "Claims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). "While a serious injury is not necessary, some actual injury is required in order to state an Eighth Amendment violation." *White v. Holmes*, 21 F.3d 277, 281 (8th Cir. 1994).

After receiving the second amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. If plaintiff fails to file a second amended complaint on a Court-provided form within twenty-one (21) days in accordance with the instructions set forth herein, the Court may dismiss this action without prejudice and without further notice to plaintiff.

13

### Motion for Appointment of Counsel

Plaintiff has filed a motion to appoint counsel. [ECF No. 3]. In civil cases, a self-represented litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has yet to file a complaint that survives initial review, so it cannot be said that he has presented non-frivolous claims. Additionally, this case appears to involve straightforward factual and legal issues, and there is no indication that plaintiff cannot investigate the facts and present his claims to the Court. The Court will entertain future motions for appointment of counsel as the case progresses, if appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to amend his complaint [ECF No. 7] is **DENIED at this time**. The Court does not accept amendments by interlineation. Additionally,

the Court does not accept discovery documents or affidavits unless attached to a motion in support of a judgment on the pleadings or for summary judgment.

**IT IS FURTHER ORDERED** that plaintiff shall pay an initial filing fee of $151.89 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a blank Prisoner Civil Rights Complaint form. Plaintiff may request additional forms as needed.

**IT IS FURTHER ORDERED** that plaintiff shall file a second amended complaint on the Court-provided form in accordance with the instructions stated above within **twenty-one (21) days** of the date of this Order. Plaintiff is advised that his second amended complaint will take the place of his original filing and will be the only pleading that this Court will review.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED** at this time without prejudice.

**IT IS FINALLY ORDERED** that if plaintiff fails to comply with this Order, the Court will dismiss this action without prejudice and without further notice.

Dated this 20th day of November, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE