UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BILLY HAROLD CRUDUP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:23-CV-00167 ACL |
| ) | |
| BILL STANGE, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter comes before the Court upon review of self-represented plaintiff Bill Crudup's amended complaint under 28 U.S.C. § 1915A. For the reasons discussed below, the Court finds that plaintiff's allegations against defendants in their official capacities are subject to dismissal. The Court will issue process as to plaintiff's claims for excessive force under the Eighth Amendment against defendants Phillips Dobbs, Pierce Yount and Yolanda Farmer in their individual capacities. The Court will similarly issue process on plaintiff's claims for failure to intervene under the Eighth Amendment against defendants Pierce Yount and Yolanda Farmer in their individual capacities. Last, the Court will issue process as to plaintiff's claim against defendant Nurse Emily Aether in her individual capacity for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

**Background and Legal Standard on Initial Review**

Plaintiff is a convicted and sentenced state prisoner at Potosi Correctional Center (PCC) in Mineral Point, Missouri. Plaintiff initially filed this 42 U.S.C. § 1983 action against three correctional officers relating to events at Southeast Correctional Center (SECC), as well as against the Missouri Department of Corrections (MDOC). Plaintiff also brought allegations against

Warden Bill Stange, former MDOC Director Anne Precythe, and Assistant MDOC Director Jason Lewis. [ECF Nos. 1].

On November 20, 2023, the Court reviewed plaintiff's initial complaint in this matter pursuant to 28 U.S.C. § 1915. [ECF No. 11]. Because plaintiff had not initially paid the full filing fee, the Court granted plaintiff leave to proceed in forma pauperis, assessed an initial partial filing fee and ordered plaintiff to amend his complaint on a Court-provided form. *Id*. Plaintiff submitted an amended complaint on December 6, 2023. [ECF No. 13]. Plaintiff paid the full filing fee in this matter on December 29, 2023. [ECF No. 16].

Although plaintiff has paid the full filing fee in this matter, under 28 U.S.C. § 1915A, the Court is required to review a civil complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a); *see also Lewis v. Estes*, No. 00-1304, 2000 WL 1673382, at *1 (8th Cir. Nov. 8, 2000) (citing *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999) (holding that the statutory language of 28 U.S.C. § 1915A applies to all prisoners, no matter their fee status, who bring suit against a governmental entity, officer, or employee)).

Under 28 U.S.C. § 1915A, the Court is required to review and dismiss a complaint filed by a prisoner in a civil action if it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

### Allegations in the Complaint and Amended Complaint

As noted above, plaintiff filed an amended complaint in this action on December 6, 2023. [ECF No. 13]. Because plaintiff's amended complaint lacks a full "Statement of Claim," the Court will utilize the "Statement of Claim" within the original complaint to set forth the background in this case. *See* ECF No. 1. Pursuant to 42 U.S.C. § 1983, plaintiff sues three MDOC Correctional Officers in his amended complaint, along with a nurse employed by Centurion. The defendants are: Officer Phillip Dobbs; Officer Pierce Yount; Officer Yolanda Farmer; and Nurse Emily Aether. He brings this action against defendants in both their individual and official capacities.

Plaintiff asserts that on October 17, 2022, after breakfast, between approximately 7:40 a.m. and 8:10 a.m. he was returning to his housing unit at SECC, Housing Unit 3. He claimed to have been in his cell no later than 8:30 a.m. Although plaintiff was purportedly on "Living Area Restriction" at the time, he was allegedly allowed to attend school. *See* ECF No. 1.

In his original complaint, plaintiff explained that when "window movement" was called at 8:30 a.m. and offenders were allowed to leave their cells to disburse to activities, his cellmate exited the cell to allow him to use the restroom. By this time, plaintiff estimated the time to be approximately 8:39 a.m. [ECF No.1].

Plaintiff claims that when he attempted to exit his housing unit to go to school, the sallyport exit door was closed and locked. He asked the control room officer, Ms. Powell, to unlock the exit door, but plaintiff claims that Powell ignored him. At some point Powell asked him what he was doing. When he told her he was attempting to go to class, Powell told him he could not go to class because his wing was now in lockdown. He again asked Powell to open the door so he could attend school, but she again replied no. When plaintiff told her he had been waiting since the "window opened," Powell replied that it had nothing to do with her. Plaintiff claims that at some point, Correctional Officer Dobbs intervened and said, "You are not allowed to leave because the window is closed." At that moment, plaintiff overhead on the walkie talkie the central control commander announce, "window closed, window is now closed." [ECF No.1].

Plaintiff then said, "See, look, ya'll at fault for me missing the window! They just announced window closed. Ya'll making me late for school. Ya'll trying to get me a CDV for not being at school. I was waiting at the door and you wouldn't open the door. How am I at fault?! I just wanna go to school, Ms. Powell, can you please open the door so I can go to school, Ms. Powell? [ECF No.1].

At this point, Ms. Powell opened the door, and plaintiff exited the building; however, Dobbs came out of the control center and blocked plaintiff's path, giving him a directive to go back inside the building and lockdown. Plaintiff purportedly told Dobbs, "Ms. Powell just let me out so I can go to school. Why are you messing with me dude? Plaintiff claims Dobbs got in his

- 4 -

personal space and said, "No you can't go to school! The window is now closed, lockdown." Plaintiff said, "You just want me to be dumb." [ECF No.1].

Plaintiff asserts that during the 9:30 a.m. window that day, Dobbs entered 3C Wing and opened his cell door and told him to come to the back office. [ECF No.1 and 13]. Waiting in the office was security Officer Pierce Yount who read him a conduct violation. Plaintiff tried to explain to Yount he was supposed to be in school, but Yount would not listen to his explanation. He then went to Ms. Farmer, his case manager, to tell her that Yount was "messin with him." After Yount was done reading the violation, he told plaintiff to return to his cell and lockdown. Plaintiff claims that he noticed that the time was still the 9:30 a.m. window movement time, so he turned to ask Yount if he could go to school. When he turned, he was allegedly hit from behind, which caused plaintiff to "protect and defend himself." [ECF No.1 and 13].

In the amended complaint, plaintiff admits that after Dobbs punched him in the back of the head, he turned around and "swung 1 time," presumably at Dobbs. [ECF No. 13, p. 10]. Plaintiff claims, however, that he did not make any verbal threats to anyway, nor did he act out physically. He simply acted to protect himself from Dobbs, who then "body slammed him" and smacked his back on the concrete. *Id*. Plaintiff claims that Dobbs made his head hit the floor, causing hip, back and shoulder pain. *Id*.

Plaintiff claims that Dobbs then climbed on top of him to hold him down, while Yount pinned his arms to the floor. At that point, plaintiff alleges that Dobbs hit him in the face, causing the back of his head to again hit the floor. Eventually, plaintiff claims he was knocked unconscious. When he "came to" he was still being punched by Dobbs while being pinned to the floor by Yount. He was then turned over, with his hands behind his back, and handcuffed. *Id.* After Dobbs and Yount turned plaintiff back over onto his back and while he was restrained, Farmer came over and sprayed plaintiff in the face with mace. *Id.*

- 5 -

Plaintiff alleges he was then taken to a security bench at H.U.2 Sallyport area and secured there. [ECF No. 1 and 13]. He claims that Dobbs' fiancé, Emily Aether, a nurse, walked by him while passing out medication and would not assess his injuries despite him asking her to do so. *Id*. He claims that he suffered several medical injuries because of the incident that would have been noticeable to defendant Aether, including head injuries, shoulder injuries, bruising and swelling on his face and neck, a "busted nose," swelled lip, swollen eyes, loose teeth, difficulty in movement, a back injury, hip injury and blurred vision. [ECF No. 13, p. 7]. Nonetheless, plaintiff claims that Nurse Aether explicitly told plaintiff "no" when he asked for treatment for his injuries, and he asserts that he did not see a doctor or nurse for his injuries for over two weeks.

For relief, plaintiff seeks monetary damages.

**Discussion**

After careful review and liberal construction of the pleadings, the Court finds that plaintiff's official capacity claims are subject to dismissal for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A. However, the Court will issue process on plaintiff's claims for excessive force in violation of the Eighth Amendment against defendants Yolanda Farmer, Pierce Yount and Phillips Dobbs. Similarly, the Court will issue process as to plaintiff's claims for failure to intervene in violation of the Eighth Amendment against defendants Farmer and Yount. Last, the Court will issue process on plaintiff's claims for deliberate indifference to his serious medical needs in violation of the Eighth Amendment against defendant Emily Aether.

**A. Official Capacity Claims**

Plaintiff has sued all the named defendants in this action in their official capacities. Defendants Phillip Dobbs, Pierce Yount and Yolanda Farmer are employed by the Missouri

Department of Corrections (MDOC). However, Nurse Emily Aether is an employee of Centurion Health, a Correctional Healthcare Company.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.,* 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

The Court will first address the MDOC defendants, or defendants Dobbs, Farmer and Yount. As to these defendants, the official capacity claims against them are actually claims against the State of Missouri, their employer. The claims against them in their official capacities fail for two reasons.

**i. State is Not a 42 U.S.C. § 1983 "Person" in a Claim for Money Damages**

First, to the extent that plaintiff seeks money damages against defendants Dobbs, Farmer and Yount in their official capacities, the State of Missouri is not a 42 U.S.C. § 1983 "person." "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon,* 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings,* 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58,

71 (1989). *See also Calzone v. Hawley,* 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Because plaintiff is missing an essential element of a § 1983 action, his claim for money damages against defendants Dobbs, Farmer and Yount, *i.e.,* against the State of Missouri, must be dismissed.

**ii. Sovereign Immunity Bars Claim for Money Damages**

Second, sovereign immunity also protects the State of Missouri (and any official capacity claims against defendants Dobbs, Farmer and Yount) from plaintiff's claims for money damages. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart,* 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood,* 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). Sovereign immunity also bars a claim for money damages against a state official sued in an official capacity. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri,* 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id.* The second exception is when a state waives

its immunity to suit in federal court. *Id.* at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception does not apply because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property"). For this reason as well, plaintiff's claim for money damages against the State of Missouri must be dismissed. For all these reasons, plaintiff has not demonstrated the liability of the State of Missouri.

Similarly, plaintiff cannot establish an official capacity claim against defendant Emily Aether, or one against her employer, Centurion Health. Section 1983 liability for constitutional violations may be found against a corporation if the violation resulted from an official policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *See Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) and *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (explaining that the "proper test" for determining whether a

corporation acting under color of state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who represent…official policy that inflicts injury actionable under § 1983"). Plaintiff has failed to allege that Nurse Aether's actions were the result of an unconstitutional police or custom. As such, he cannot establish an official capacity claim against Centurion Health.

### B. Excessive Force Claims

Plaintiff alleges that defendants Phillip Dobbs, Yolanda Farmer and Pierce Yount acted with excessive force in violation of the Eighth Amendment on October 17, 2022. He asserts that Yount held him while Dobbs punched him until he was knocked unconscious, and even when he eventually woke up from his unconscious state, he was still being restrained by Yount and repeatedly hit by Dobbs. Moreover, plaintiff alleges that even after he was handcuffed, Farmer maced him.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs,* 436 U.S. 658, 685 (1978). One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment which limits the conditions in which a State may confine convicted criminals. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 183 (1976)); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986).

"[Correctional] Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." *Johnson v. Blaukat,* 453 F.3d 1108, 1112 (8th Cir. 2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992))

- 10 -

(internal quotation marks omitted). The test for reasonableness or the good-faith application of force depends on the following:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

*Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson*, 503 U.S. at 7).

The Court must "accept the complaint's factual allegations as true and view them in the light most favorable to the plaintiff." *Rinne v. Camden County*, 65 F.4th 378, 383 (8th Cir. 2023). *See also Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). Taking plaintiff's allegations as true, the correctional officer defendants appear to have used an excessive level of force when plaintiff was not actively resisting and/or when he was restrained. As such, the Court will issue process on plaintiff's Eighth Amendment claims for excessive force against defendants Dobbs, Farmer and Yount, in their individual capacities. Because plaintiff paid the full filing fee in this action, he is responsible for service of process. *See* 28 U.S.C. § 1915A.

**C. Failure to Intervene Claims**

Plaintiff additionally alleges that defendants Farmer and Yount should have intervened when defendant Phillip Dobbs was excessively attacking him during the altercation on October 17, 2022. First plaintiff asserts that Yount should not have assisted Dobbs in holding him down. Plaintiff also claims that Farmer should not have assisted Dobbs in restraining him by using mace. Moreover, plaintiff asserts that both Yount and Farmer should have actively intervened in Phillips' use of excessive force against plaintiff.

A prisoner may also assert an excessive-use-of-force claim against a correctional officer who knew or had reason to know another officer was using excessive force, and who had the opportunity to intervene to prevent the excessive use of force by his fellow correctional officer but failed to do so. *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012); *Putman v. Gerloff*, 639 F.2d

- 11 -

415, 423 (8th Cir. 1981). The question is whether the officer's inaction amounts to deliberate indifference to the inmate's health and safety. *Buckner v. Hollins*, 983 F.2d 119, 122 (8th Cir. 1993).

The Court again finds that plaintiff's allegations must be taken as true. He has alleged an excessive use of force by Phillip Dobbs, and he asserts that Yount and Farmer had a chance to intervene or prevent the excessive use of force but failed to do so. To that end, the Court will issue process as to plaintiff's Eighth Amendment failure to intervene claims against defendants Farmer and Yount in their individual capacities. Because plaintiff paid the full filing fee in this action, he is responsible for service of process. *See* 28 U.S.C. § 1915A.

### D. Deliberate Indifference to Serious Medical Needs Claims

Last, plaintiff asserts that after the altercations with Dobbs, Farmer and Yount, he was sitting on a bench in H.U.2 Sallyport area, when Nurse Emily Aether walked by him. Plaintiff claims that despite him asking Nurse Aether to assess his injuries, she would not assist him. At this time, plaintiff claims he had noticeable and obvious injuries to his head, shoulders, face, neck and back.

The Eighth Amendment's prohibition on cruel and unusual punishment also protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.,* 684 F.3d 808, 817 (8th Cir. 2012). To prevail on a deliberate indifference claim, a prisoner plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy,* 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference. *Jones v. Minn. Dep't of Corr.,* 512 F.3d 478, 482 (8th Cir. 2008).

Taking plaintiff's allegations as true, that he asked for medical assistance from Nurse Aether, his wounds were noticeable and yet, she denied him treatment, the Court must issue process on his claim for deliberate indifference to his serious medical needs. Because plaintiff paid the full filing fee in this action, he is responsible for service of process. *See* 28 U.S.C. § 1915A.

**Conclusion**

Even though plaintiff paid the full filing fee in this matter, as a prisoner bringing suit against a government entity and/or employees of a governmental entity, plaintiff's case is subject to review under 28 U.S.C. § 1915A. Based on such review, the Court finds that plaintiff's allegations against defendants in their official capacities are subject to dismissal. The Court will issue process as to plaintiff's claims for excessive force under the Eighth Amendment against defendants Phillip Dobbs, Pierce Yount and Yolanda Farmer in their individual capacities. The Court will similarly issue process on plaintiff's claims for failure to intervene under the Eighth Amendment against defendants Pierce Yount and Yolanda Farmer in their individual capacities. Last, the Court will issue process as to plaintiff's claim against defendant Nurse Emily Aether in her individual capacity for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

Because plaintiff paid the full filing fee in this action, he is responsible for service of process on these claims. *See* 28 U.S.C. § 1915A.

## Instructions for Service of Process

Because plaintiff paid the full filing fee neither the Court nor the United States Marshals Service performs service of process. Plaintiff must serve defendants with a summons in accordance with Federal Rule of Civil Procedure 4. The Court will instruct the Clerk to send plaintiff two file-stamped copies of both the complaint and the amended complaint [ECF Nos. 1 and 13] as well as summons. To effectuate service, plaintiff must either hire a private process server or have someone else over the age of 18 who is not a party personally deliver the summons and complaint and amended complaint to the defendants. Alternatively, plaintiff may serve in accordance with the methods of service set forth in Missouri state law. Return of summons must be recorded and filed with the Court no later than ninety (90) days of the date of this Memorandum and Order. Plaintiff's failure to timely file a return of service of summons in accordance with Federal Rule of Civil Procedure 4(m) will result in a dismissal of this action, without prejudice.

## Motion for Appointment of Counsel

Plaintiff has also filed two motions for appointment of counsel. [ECF Nos. 14 and 24]. An indigent litigant has "neither a constitutional nor a statutory right to appointed counsel in civil cases." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (citing *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006)). A district court may appoint counsel in a civil case if it is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Id.* (citing *Johnson v. Williams*, 788 F.2d 1319, 1322 (8th Cir. 1986)). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the factual complexity of the issues, the litigant's ability to investigate the facts and present his or her claims,

the existence of conflicting testimony, and the complexity of the legal arguments. *Id.* (citing *Phillips*, 437 F.3d at 794).

In this case, there is no indication that plaintiff is incapable of representing himself, and nothing in the instant motion or in the record before the Court indicates that the factual or legal issues are sufficiently complex to justify the appointment of counsel. Moreover, defendants have yet to be served with process and discovery has not begun, so there is no conflicting testimony. However, recognizing that circumstances may change, the Court will deny the motion for appointment of counsel without prejudice, and will entertain future such motions, if appropriate, as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's official capacity claims against defendants are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motions for appointment of counsel [ECF Nos. 14 and 24] are **DENIED AT THIS TIME**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint as to defendants Phillip Dobbs, Pierce Yount and Yolanda Farmer in their individual capacities as to plaintiff's claims for excessive force under the Eighth Amendment. Because plaintiff paid the full filing fee in this action, he is responsible for service of process. *See* 28 U.S.C. § 1915A.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint as to defendants Pierce Yount and Yolanda Farmer in their individual capacities as to plaintiff's claims for failure to intervene under the Eighth Amendment. Because plaintiff paid the full filing fee in this action, he is responsible for service of process. *See* 28 U.S.C. § 1915A.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint as to defendant Nurse Emily Aether in her individual capacity as to plaintiff's claim for deliberate indifference to his serious medical needs under the Eighth Amendment. Because plaintiff paid the full filing fee in this action, he is responsible for service of process. *See* 28 U.S.C. § 1915A.

**IT IS FURTHER ORDERED** that plaintiff's motion for copies of the amended complaint and for the affidavit of Lamont Williams [ECF No. 21] is **DENIED AS MOOT** as these documents were provided to plaintiff on February 29, 2024.

**IT IS FURTHER ORDERED** that plaintiff's motion to amend his complaint by interlineation [ECF No. 23] is **DENIED** as plaintiff was informed in the Court's November 20, 2023 Opinion, Memorandum and Order that the Court will not accept amendments by interlineation.

**IT IS FURTHER ORDERED** that the Clerk shall prepare two file-stamped copies of the complaint [ECF No.1] and the amended complaint [ECF No. 13], **per each defendant**, **as well as summons for plaintiff.** These documents shall be provided to plaintiff so that he may serve summons on defendants on his own behalf in accordance with the Federal Rules of Civil Procedure. Plaintiff will have ninety (90) days from the date of this Memorandum and Order in which to file his return of summons for each defendant.

**IT IS FURTHER ORDERED** that an appeal of this Opinion, Memorandum and Order would not be taken in good faith.

A separate Order of Partial Dismissal will be filed herewith.

Dated this 18th day of June, 2024.

                                            HENRY EDWARD AUTREY
                                            UNITED STATES DISTRICT JUDGE