UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

BILLY HAROLD CRUDUP,               )
                                   )
            Plaintiff,             )
                                   )
        v.                         )        Case No. 1:23-CV-167-ACL
                                   )
BILL STANGE, et al.,               )
                                   )
            Defendants.            )

## MEMORANDUM AND ORDER

This matter is before the Court on the *pro se* Complaint of Plaintiff Billy Harold Crudup

against Defendants Yulaunda Farmer and Emily Achter on his civil rights action pursuant to 42

U.S.C. § 1983.   Crudup is currently incarcerated at Potosi Correctional Center ("PCC") in

Mineral Point, Missouri.   His claims relate to events that occurred while he was incarcerated at

Southeast Correctional Center ("SECC") in Charleston, Missouri.

Presently pending are the following motions filed by Crudup: motions for the issuance of

subpoenas (Docs. 75, 90, 95); a motion for the appointment of counsel (Doc. 76); motions to

compel (Docs. 79, 80, 84, 86, 97, 98, 99, 103); a motion to amend the Complaint (Doc. 82); a

motion for extension of deadlines in the Case Management Order (Doc. 93); and two motions for

sanctions (Docs. 87, 102).

### I.      Background

In his Complaint, Crudup alleges that he got into an altercation with SECC correctional

officers Philip Dobbs, Pierce Yount, and Yulaunda Farmer during the morning of October 17,

2022.   He states that the altercation resulted in injuries to his head, hip, back, and shoulder.

Crudup claims that he was knocked unconscious and was sprayed in the face with mace.   After the altercation, he was taken to the Housing Unit 2 Sallyport area and secured on a bench.   At that time, Crudup alleges that Officer Dobbs' fiancé, Nurse Emily Achter, walked by the bench while passing out medication and would not assess his injuries despite him asking her to do so. Crudup claims he suffered the following noticeable injuries as a result of the altercation: head injuries, bruising and swelling on his face and neck, a busted nose, swollen lip, swollen eyes, loose teeth, difficulty in movement, a back injury, a hip injury, and blurred vision from the mace. He alleges that Nurse Achter nonetheless told him "No" when he requested treatment for his injuries, and he did not see a doctor or nurse for his injuries for over two weeks.

Crudup initially named six correctional officers at SECC and the Missouri Department of Corrections ("MODOC") as Defendants in this action.   (Doc. 1.)   He filed an amended Complaint, in which he sues correctional officer Dobbs, Yount, and Farmer; and Nurse Achter. (Doc. 13.)   The Court[1] found that Crudup's official capacity claims were subject to dismissal for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A, but issued process on his claim for excessive force in violation of the Eighth Amendment against Defendants Farmer, Yount and Dobbs; claims for failure to intervene in violation of the Eighth Amendment against Defendants Farmer and Yount; and claims for deliberate indifference to his serious medical needs in violation of the Eighth Amendment against Defendant Achter.   (Doc. 27.)

On October 4, 2024, the Court dismissed Defendants Dobbs and Yount from this action due to Plaintiff's failure to timely provide information such that these Defendants could be

---

[1]United States District Judge Henry Edward Autrey.

served.   (Doc. 63.)   The Court denied Defendant Achter's Motion to Dismiss on October 31, 2024, finding Crudup had exhausted his administrative remedies and alleged sufficient facts to state a claim that Achter was deliberately indifferent to his serious medical needs.   (Doc. 64.)

## II.    Discussion

As previously noted, Plaintiff has filed 16 motions that are presently pending before the Court.   The undersigned will discuss these motions in turn.

### A.  Motion to Amend Complaint (Doc. 82)

Crudup has requested leave to file an Amended Complaint for the following purposes: (1) to add one page to his statement of claim section regarding Defendant Emily Achter in order to provide more factual details; and (2) to correct the spelling of both Defendants Emily Achter and Yulaunda Farmer.   (Doc. 82.)   He attached the proposed Amended Complaint to his Motion. (Doc. 82-1.)

Neither Defendant has filed a response in opposition to Crudup's Motion.   The Motion was filed within the time period for the amendment of pleadings and does not add any defendants or claims.   Thus, Plaintiff's Motion to Amend Complaint is granted.

### B.  Motions for Issuance of Subpoenas (Docs. 75, 90, 95)

The Court has discretion whether to grant or deny subpoenas for indigent parties. *Williams v. Carter*, 10 F.3d 563, 566 (8th Cir. 1993).   "This power should be exercised to protect the resources of the Court and the Marshals Service, and to prevent harassment and undue expense of other parties and non-parties."   *Stockdale v. Stockdale*, 4:08-CV-1773 CAS, 2009 WL 4030758, at *1 (E.D. Mo. Nov. 18, 2009).   Courts generally "consider factors such as the relevance and materiality of the information requested and the necessity of the particular

testimony or documents to proving the indigent's case." *Id.*   The Court may deny a request for a subpoena if it is frivolous, immaterial or unnecessary, unduly burdensome, would result in costs the indigent cannot provide, or is otherwise unreasonable.   *Id.*   A subpoena imposes an undue burden on a non-party when the same information is available but not first sought from a party.  *In re Cantrell v. U.S. Bioservices Corp.*, 09-MC-0158-CV-W-GAF, 2009 WL 1066011, at *2 (W.D. Mo. Apr. 21, 2009).

Crudup has filed three separate motions for the issuance of subpoenas.   First, on December 9, 2024, Crudup requested that the Clerk of Court send him four "subpoena forms with the instructions on how to use them."   (Doc. 75.)   Similarly, on March 24, 2025, Crudup requested that the Court send him "2 subpoenas", without further explanation.   (Doc. 90.) The Court will deny these motions, as Crudup has not indicated the purpose of the requested subpoenas.

On March 27, 2025, Crudup filed a motion to subpoena the Office of Professional Standards.   (Doc. 95.)   He states that the Office of Professional Standards investigated the incident at issue in this case.   Crudup requests reports relevant to the investigation.   He indicates that he has already requested this information from Defendant Farmer and his request was ignored.

The Court will deny Crudup's request to subpoena the Missouri Office of Professional Standards without prejudice.   The information Crudup seeks should be available to Defendant Farmer.   The Court will address the Office of Professional Standards report below, in connection with Crudup's pending motions to compel.

### C.  Motion to Appoint Counsel

Crudup requests that the Court appoint counsel to represent him in this matter.   In support of his request, he alleges the following: there have been delays in receiving mail from the Court, which resulted in him missing a discovery deadline; Defendants have not provided all the requested discovery; he is uneducated; he has limited access to the law library; and he needs to question eyewitnesses.   (Doc. 76 at 1-3.)

In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel.   *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013).   *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case").   Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel."   *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018).   When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim.   *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time.   Plaintiff has demonstrated, at this point, that he can present his claims to the Court.   Additionally, neither the factual nor the legal issues in this case appear to be complex.   Crudup has adequately raised issues regarding discovery, which will be addressed below.   The Court will also extend discovery deadlines to address Plaintiff's concern with the

timely receipt of Court correspondence.

Thus, Crudup's Motion for Appointment of Counsel (Doc. 76) is denied.

### D.  Motions to Compel and Motions for Sanctions (Docs. 79, 80, 84, 86, 97, 98, 99, 102)

Crudup has filed six separate motions to compel and two related motions for sanctions, which are currently pending before the Court.

Federal Rule of Civil Procedure (FRCP) 37(a) permits parties to move for an order compelling discovery.   The Rule requires that any motion requesting such relief "include[s] a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."   Fed. R. Civ. P. 37(a).   It also lays out four circumstances where a motion compelling discovery may be sought: first, where a deponent fails to answer a question asked under FRCP 30 or 31; second, where a corporation or other entity fails to make a designation under FRCP 30(b)(6) or 31(a)(4); third, where a party fails to answer an interrogatory under FRCP 33; or fourth, where "a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—under Rule 34."   Fed. R. Civ. P. 37(a)(3)(B).   Evasive or incomplete answers or responses qualify as failures to answer or respond for purposes of a motion compelling discovery.   Fed. R. Civ. P. 37(a)(4).

Eastern District of Missouri Local Rule 3.04(A) further emphasizes that Rule 37's requirement of attempt at a good-faith conference is not hollow, providing that the "Court will not consider any motion relating to discovery ... unless it contains a statement" that the movant conferred or attempted to confer in good faith with opposing counsel.  *See Johnson v. Doyle*,

6

No. 4:07-cv-1843-AGF, 2008 WL 2397380, at *1 (E.D. Mo. June 9, 2008) (requiring plaintiff to provide court with evidence of compliance with L.R. 3.04(A) in denying his motion to compel). While the Court recognizes Crudup is proceeding pro se, pro se litigants must comply with procedural rules just the same as an attorney. *See Clemons v. Lombardi*, No. 4:13-cv-458-CDP, 2014 WL 409107, at *1 (E.D. Mo. Feb. 3, 2014) (citing *Faretta v. California*, 422 U.S. 806, 834-35, 834 n.46 (1975)); *Am. Inmate Paralegal Assoc. v. Cline*, 859 F.2d 59, 61 (8th Cir. 1988) ("Pro se litigants are not excused from complying with court orders or substantive and procedural laws.").

Defendants argue that Crudup has not included the required statement that he tried to confer with opposing counsel in good faith.   Upon review of the pleadings, the Court finds that, although Crudup did not technically comply with the rules' requirements, Crudup has adequately shown that he made the necessary effort to resolve this discovery dispute prior to seeking court intervention.[2]   As such, the Court will address Crudup's motion in turn.

### 1.  Motions as to Defendant Achter (Docs. 79, 80)

Crudup has filed two motions to compel against Defendant Achter.   Specifically, he filed a Motion to Compel Defendant Achter to Fully Answer Interrogatories (Doc. 79) and a Motion to Compel Defendant Achter to Produce Documents (Doc. 80).

### a.  Interrogatories

The Court notes that Defendant Achter did not respond to Crudup's motion to compel

---

[2]  For example, Crudup states that he has "written both Defendants, humbly and respectfully 3-4 times each asking for everything" in his motions to compel.   (Doc. 85 at 1.)

answers to interrogatories.   (Doc. 79.)   In this Motion, Crudup requests that the Court compel Defendant Achter to fully answer Interrogatories Numbers 2-9.   He attached Defendant's Objections and Answers to Plaintiff's Interrogatories.   (Doc. 79-1.)   In the interest of judicial economy, the Court will address the disputes at issue notwithstanding the lack of response from Defendant Achter.

First, Crudup's Interrogatory #2 provides: "What is the protocol after a use of force on a prisoner for Centurion nurses at Southeast Correctional Center?"   *Id.* at 1.   Defendant objects to this interrogatory because it "is vague as to what protocols it is referring to," and "because it requires a narrative response."   *Id.*   Crudup argues that "both correctional officers and Centurion Nurses have a protocol after and during a use of force on a prisoner."   (Doc. 79 at 2.) The Court finds that Defendant's objections are valid and will be sustained.   Crudup's interrogatory request is broad, in that it requires nurses' protocol after all uses of force and requires a narrative response.   The Court further notes that the request potentially implicates institutional safety and security concerns.

Interrogatory Numbers 3, 4, and 5 request the following information regarding former Defendant Phillip Dobbs: whether Defendant Achter was in a romantic relationship with Dobbs before, during, and after the incident (#3); whether Defendant Achter shares a child with Dobbs (#4); and whether Defendant Achter has Dobbs' contact information (#5).   Defendant Achter objects to these interrogatories on the basis they seek private information that would create a security risk if divulged, they are overbroad, and not relevant to the case.   Crudup responds that Defendant Achter was married to Dobbs and they share a child.   He requests that Achter provide

8

Dobbs' contact information to the United States Marshals Service so that service can be effectuated on Dobbs.

The Court agrees that information about Achter's relationship status and child is irrelevant and poses a security risk if divulged.   The contact information of Dobbs, however, is relevant to this case so that this defendant can be served.   Dobbs was previously dismissed without prejudice from this matter due to Crudup's inability to obtain his contact information to effectuate service.   The Court's subsequently issued Case Management Order provides as follows:

> (D) **If Defendants have the addresses at which prior defendants Phillip Dobbs and Pierce Yount may be found and served, defendants must provide this information to the Court under seal and ex parte so that these defendants may be served with process in this matter. Conversely, defense counsel may agree to waive service for these individuals and enter an answer on their behalf**

(Doc. 69 at 2.)   Thus, Defendant Achter's objections to Interrogatories 3, 4, and 5 are sustained, but if Defendant Achter has knowledge of an address at which Dobbs may be served due to a previous relationship or otherwise, she must provide this information to the Court under seal and ex parte immediately so that service may be effectuated.

Interrogatory Number 6 asks whether Defendant Achter has ever been written up by staff or an inmate for refusing prisoners medical treatment, "if so please describe in detail who, when, and what for and what was the outcome."   (Doc. 79-1 at 2.)   Defendant objects on the basis the interrogatory is "vague, requires a narrative response, and [is] overbroad in seeking information that is not relevant to the claim or defense of any party."   *Id.*   The Court agrees that the information sought is overly broad and not relevant to this case.   Crudup's motion to compel will therefore be denied as to this interrogatory.

9

In Interrogatory Number 7, Crudup asks if Defendant Achter was passing out medication in Housing Unit 2 on the date in question and if anyone was escorting her.  *Id.* at 3.   In Interrogatory 8, Crudup asks what time in the morning medication is passed for Housing Unit 2 and how long it usually takes to complete.  *Id.*   Defendant responds to both of these interrogatories: "Investigation continues."  *Id.*   The Court finds this answer sufficient at this time.   When Defendant Achter learns the answers to these interrogatories, she is obligated to file supplemental responses.

Finally, Interrogatory Number 9 requests the names of members of the medical staff that were on shift the morning of October 17, 2022.   Defendant objects on the basis the interrogatory is "vague and unduly burdensome."  *Id.*   The undersigned agrees.   Unless medical staff witnessed the incident at issue, Crudup is not entitled to the names of staff working that day.

 Thus, Crudup's Motion to Compel answers to interrogatories (Doc. 79) will be denied, except Defendant will be directed to provide Dobbs' address if available as set out above.

**b.  Documents**

In his Motion to Compel the Production of Documents (Doc. 80), Crudup requests that the Court compel the following documents: (1) all written statements identifiable as reports about the incident on October 17, 2022 made by Centurion employees or witnesses; (2) any and all Centurion records regarding Defendant Achter (i.e. IRRs, complaints, staff conduct reports) and the outcomes of such; (3) all certifications, awards, and training classes given to Defendant Achter by the MODOC and Centurion; (4) all incident complaints or reports filed on Defendant Achter by staff and inmates; and (5) the medication administration record sheet for October 17,

2022.  Defendant has filed a Response in Opposition to Crudup's Motion (Doc. 83) and Crudup has filed a Reply (85).

The Court rules as follows:

### i.    Reports about the October 17, 2022 Incident

Defendant Achter responds that "[s]hould any such report exist it is protected from disclosure by the work product doctrine."  (Doc. 83 at 1-2.)   Crudup argues that there was an "office filled with witnesses/caseworkers on the day of and during the incident who are by law obligated to make reports," and this is the reason he is requesting any written statements or reports about the incident.  (Doc. 85 at 2.)

The Courts finds Defendant's response to Crudup's request for production insufficient. Any reports regarding the incident generated by Defendant is relevant to Crudup's claims and could identify witnesses.   If Defendant believes such a report contains protected information, Defendant should identify the nature of the information and explain why its concerns cannot be addressed by redaction or by allowing Crudup to access the report without receiving a copy.

Thus, Crudup's motion will be granted in part as to his first request.

### ii.    Centurion Records regarding Defendant Achter

Crudup next requests "any and all Centurion records" of Defendant Achter "(ie IRRS's, complaints, staff conduct reports, and the outcomes and results."   (Doc. 80 at 1.) Defendant responds that Crudup's request is overbroad in seeking every IRR and complaint that mentions Defendant and thereby seeks information that is not relevant and not proportional to the needs of the case.   Defendant further argues that the IRRs and grievance records Crudup seeks

11

must be obtained from the MODOC.   The undersigned agrees and will sustain Defendant's objection to this request.

### iii.      Certifications and Training Records

Crudup seeks all certifications, awards, and training classes given to Defendant Achter by the MODOC and Centurion.   Defendant objects to the request on the basis that the request is overbroad and not relevant to Crudup's claim as Crudup makes no claim that Defendant was unqualified.   The undersigned agrees and will sustain Defendant's objection.

### iv.      Incident Reports Regarding Defendant Achter

Crudup requests "all incident complaints/reports filed on Defendant Emily Achter by staff and inmates."   (Doc. 80 at 1.)   Defendant responds that this request is duplicative of Crudup's second request and is similarly overbroad.   The Court agrees that Crudup's request is overly broad and seeks information that is irrelevant and not proportional to the needs of the case.   Thus, Defendant's objection is sustained.

### v.      Medication Administration Record Sheet

Finally, Crudup seeks the Medication Administration Record ("MAR") for October 17, 2022.   Defendant responds that Crudup never requested such a document in his requests for production and to the extent he seeks a medical record containing the names or health information of other offenders, the Health Insurance Portability and Accountability Act ("HIPAA") and Missouri law prevent Defendant from producing such records.   Defendant further states that, if Crudup is requesting the MAR from his own chart, any such document received from the MODOC, who is the custodian of all such records, was produced to Plaintiff as part of Defendant's initial disclosures.   In his Reply, Crudup acknowledges that information

identifying other inmates is protected but argues that such information can be redacted by Defendant.   He states that he is just seeking a record of which nurse passed out medication in Housing Unit 2 in the morning and afternoon of October 17, 2022.

The Court will grant Crudup's motion in part.   The MAR could assist Crudup in determining whether Achter was present during the time at issue.   Defendant's confidentially concerns are addressed by redacting the names and medical information of other offenders and providing only the name of nurses passing out medication in Housing Unit 2 in the morning and afternoon of October 17, 2022.

Accordingly, Crudup's Motion to Compel Production of Documents (Doc. 80) will be granted in part and denied in part as discussed above.

### 2.   Motions as to Defendants Achter and Farmer (Docs. 84, 86, 97, 98, 99, 102, 103)

Crudup has filed four separate motions to compel as well as related motions for sanctions that are directed at one or both Defendants.

### *Motions to Compel*

First, on February 13, 2025, Crudup filed a Motion to Compel Defendant Farmer to produce twelve categories of documents and videos.   (Doc. 84.)   Defendant did not file a response to this motion.   On March 31, 2025, Crudup filed a "Revised" Motion to Compel Discovery as to Defendant Farmer.   (Doc. 99.)   In this Motion, Crudup states that he has made good faith efforts to obtain the requested documents and videos from Defendant on three occasions.   Crudup's February 13, 2025 Motion to Compel (Doc. 84) is found moot due to the filing of the Revised Motion.   Defendant Farmer filed a Response in Opposition to Crudup's

March 31, 2025 Motion to Compel on April 11, 2025.   (Doc. 104.)   The Court will therefore take up this Motion below.

On March 17, 2025, Crudup filed a Motion to Compel Defendants Achter and Farmer to produce documents.   (Doc. 86.)   This Motion requests only video footage from SECC Housing Unit 2, B-Wing, on October 17-18 2022.   Each Defendant filed a Response to this Motion. Defendant Achter responded that any such video footage is not in the possession, custody, or control of Defendant Achter but, instead, must be obtained from the MODOC.   (Doc. 88.) Defendant Farmer argued that Crudup's discovery request was moot, as Defendant sent two videos of the B-Wing on October 17, 2022 during the relevant times to Potosi Correctional Center, where the litigation coordinator arranged for Crudup to view the video.   (Doc. 92.) Defendant states that Crudup attested to having viewed the footage on March 26, 2025.   (Doc. 92-1.)

On March 31, 2025, Crudup filed two additional motions to compel the production of video footage.   (Docs. 97, 98.)   In the first motion, he acknowledges that he viewed video footage on March 26, 2025, but argues that the footage was from a camera on the ceiling that is far away from where the incident occurred and only shows the backs of former Defendant Dobbs and Yount while they were holding Crudup down.   (Doc. 97.)   Crudup contends that there are several cameras in the classification office where the incident took place, which will better capture the usage of force incident.   He therefore requests that the Court compel Defendant Farmer to produce footage from these other cameras.   In the second motion, Crudup requests video footage of him sitting on the bench after the usage of force incident on October 17, 2022, in Housing Unit 2; and footage of 2b, Cell #11 from 9:30 a.m. on October 17, 2022, to October

18, 2022 at 1:30 p.m., which will show that he received no medical treatment from Defendant Achter.   Defendant Farmer filed a Response in Opposition to Crudup's Motion on April 11, 2025.  (Doc. 104.)

Because Defendant Farmer has provided relevant video footage that Crudup admits he viewed on March 26, 2025, the Court will deny Crudup's initial Motion to Compel production of video footage.   (Doc. 86.)

The Court will next discuss Crudup's subsequent motions to produce video footage (Docs. 97, 98) and his Revised Motion to Compel (Doc. 99).

### *Additional Video Footage*

As previously noted, Crudup argues that Defendant Farmer failed to provide all video footage of the incident at issue.   (Docs. 97, 98.)   He requests that the Court compel Defendant Farmer to produce footage from additional cameras.

Defendant Farmer has filed a Response, in which she argues that Crudup requests "excessive amounts of irrelevant and non-existent footage."   (Doc. 104 at 2.)   Defendant states that some footage—relevant footage—was retained, but not from all cameras in the facility. Defendant reiterates that Crudup has reviewed the two videos Defendant provided to him depicting the B-Wing on October 17, 2022 during the relevant times.

The Court finds that Defendant Farmer has adequately responded to Crudup's request for the production of video footage of the incident.   It is understandable that Crudup would like footage from additional areas and angles, but Defendant has represented to the Court that she has produced all camera footage of the incident in her possession.   The Court cannot compel Defendant to produce footage that does not exist.   Thus, Crudup's Motions will be denied.

***Revised Motion to Compel***

In his Revised Motion to Compel, Crudup requests that the Court compel Defendant Farmer to produce the following items: (1) medical records of Crudup from October 17, 2022 to March 20, 2025; (2) all video footage regarding the incident at issue; (3) all reports about the incident on October 17, 2022 made by MODOC employees or witnesses; (4) all rules, regulations, policies, and procedures of Centurion and MODOC regarding the use of force on prisoners; (5) all rules, regulations, and policies of Centurion regarding the procedure after a use of force on a prisoner; (6) the "complete prison records of the plaintiff Billy H. Crudup;" (7) all devices used by Defendants in the incident at issue such as "walky talky, weapons, handcuffs, mace, and clothing" for Crudup's inspection; (8) all prison records (i.e. IRRs, complaints, and staff conduct reports) of Defendants Farmer and Achter; (9) all certificates, certifications, and training classes given to the Defendants by MODOC and Centurion; (10) all reports written by the Office of Professional Standards regarding its investigation of the relevant incident; (11) all incident reports filed on Defendants Achter and Farmer by staff and inmates; and (12) allow Crudup to enter property under Defendant's control, such as the classification office and security bench and "the whole housing unit 2-3 for a chance to photograph, inspection and examine, measure."   (Doc. 99 at 4.)

Defendant Farmer responds that Crudup's Motion to Compel should be denied because the requested items have either been provided, do not exist, are irrelevant, pose a threat to the integrity of the prison, or are privileged.

The Court rules as follows:

16

**Video Footage and Medical Records**

As to Crudup's requests for video footage, the Motion will be denied, as the Court has found that Defendant provided all relevant footage in her possession.

Defendant states that she has also provided Crudup with relevant medical records in her possession.   She has attached these medical documents to her Response.   (Doc. 104-2.)   As such, Crudup's motion to compel medical records will be denied.

**Reports Regarding the Incident**

Crudup requests all reports about the incident on October 17, 2022 made by MODOC employees or witnesses, as well as all reports written by the Office of Professional Standards regarding its investigation of the incident.

Defendant responds generally that she has already provided "all relevant and non-privilege[d] documents to Plaintiff that she has in her possession," and that she would supplement her disclosures if any other relevant and non-privileged documents are discovered. (Doc. 104 at 3.)   She does not specifically address incident reports authored by MODOC employees or the Office of Professional Standards.

The Court notes that Crudup filed a motion to subpoena the Office of Professional Standards due to Defendant's failure to provide the report stemming from the investigation.   The undersigned denied Crudup's motion, noting that this information should be available to Defendant Farmer.   An investigative report of the incident at issue—whether completed by a MODOC employee or the Office of Professional Standards—is undoubtedly relevant to Crudup's claims.   The Court also appreciates that such documents may contain personal information that could compromise institutional security.   Thus, Defendant Farmer is directed to

17

provide any reports of the incident at issue to Crudup if they are available, redacting any information that could compromise security.   If such a report is not available to Defendant, Defendant shall so inform the Court.

**Policies and Procedures**

Crudup requests that the Court compel Defendant to produce all rules, regulations, policies, and procedures of Centurion and MODOC regarding the use of force on prisoners and regarding the procedure after a use of force on a prisoner.

Defendant responds that she has objected to the disclosure of MODOC policies regarding the use of force because such policies are closed to inmates due to the safety of the institution. She states that she is not in possession of Centurion's policies.

The Court will sustain Defendant Farmer's objection to Crudup's request for MODOC use of force policies.   The undersigned agrees that Defendant's concerns are valid and that compelling the disclosure of MODOC policies on the use of force would compromise prison safety and security.   Because MODOC is not in possession of Centurion's policies, Crudup's motion to compel Defendant Farmer to produce these policies will be denied.

**Crudup's Complete Prison Record**

Crudup requests that the Court compel Defendant Farmer to provide Crudup's "complete prison record."   Defendant responds that Crudup's request is vague and overbroad in that Crudup has been incarcerated since 2013 and housed at different facilities.   Defendant states that she has already provided Crudup with his relevant medical records and his face sheet and will provide Crudup with another copy of these documents.

The undersigned agrees that Crudup's request for his entire prison record is overbroad, unduly burdensome, and disproportionate to the needs of the case.   Defendant's objection to this request is therefore sustained.

**Requests for Inspection**

Crudup requests that the Court compel Defendant Farmer to produce all devices used by Defendants in the incident at issue such as "walky talky, weapons, handcuffs, mace, and clothing" for Crudup's inspection.   Similarly, he requests that Defendant allow him to enter property under Defendant's control to photograph, inspect, and examine the property.

Defendant responds that Crudup's request should be denied in order to maintain safety and security within the facility.   Defendant notes that Crudup is incarcerated for violent crimes and has previously assaulted prison staff.   She further argues that Crudup's access to the requested devices and property would not reasonably lead to the discovery of relevant information for this case.

The Court finds that Defendant's security concerns are well-founded and her objections will be sustained.

**Records Regarding Defendants**

Crudup seeks the following records regarding Defendants: all IRRs, complaints, and staff conduct reports of Defendants Farmer and Achter; all certificates, certifications, and training classes given to the Defendants by MODOC and Centurion; and all incident reports filed on Defendants Achter and Farmer by staff and inmates.

Defendant Farmer argues that to the extent Crudup requests personal information and employee records of Defendant Farmer or any other correctional officer employed by the MODOC, such documents are privileged.

The undersigned agrees that employment records of Defendant Farmer and any other correctional officer are privileged and may pose prison security concerns.   Additionally, Crudup's request for incident reports filed by other inmates and his request for all training certificates are overbroad and not likely to lead to the discovery of relevant information.   Thus, Defendant's objections are sustained as to these requests.

Accordingly, Crudup's Revised Motion to Compel (Doc. 99) will be granted in part and denied in part as set out above.

### Motions for Sanctions

Crudup filed a Motion for Entry of Default on March 20, 2025.   (Doc. 87.)   He requests that the Court issue judgment against Defendants Achter and Farmer as a sanction for failing to comply with provisions of the Court's Case Management Order.   Defendants have filed separate responses in opposition to this motion, in which they argue that they are in compliance with the Case Management Order and Crudup's motion is procedurally improper. (Docs. 89, 91.) Crudup filed a second Motion for Sanctions and Default Judgment against Defendant Farmer on April 4, 2025.   (Doc. 102.)   In this Motion, he argues that the video provided by Defendant Farmer was edited and was only one piece taken from lengthy footage from October 17, 2022. He renews his request to enter default judgment against Defendant Farmer as a sanction.

"The Federal Rules of Civil Procedure expressly authorize sanctions for failure to comply with a court's discovery order, including striking pleadings or dismissing an action in whole or in

20

part." *United States v. Eleven Million Seventy-One Thousand One Hundred & Eighty-Eight Dollars & Sixty-Four Cents $11,071,188.64 in United States Currency*, 825 F.3d 365, 369 (8th Cir. 2016) (citing Fed. R. Civ. P. 37(b)(2)(A)(iii), (v)).

Crudup argues that Defendants failed to comply with sections C, D, and E of the Case Management Order issued on November 21, 2024 ("CMO"). These provisions govern the parties' disclosures and provide as follows:

> (C) Defendants shall submit to the plaintiff a list of the names and home or business addresses of all persons having knowledge or information of the facts giving rise to plaintiffs claim, subject to the following exception. ln the case of persons no longer employed by the relevant governmental or other entity, defense counsel may, in lieu of providing an address, state that the person may be contacted through defense counsel ; defendants shall provide home and business addresses for such persons to the United States Marshal on an ex parte basis, if requested by the Marshal or ordered by the Court.
> (D) **If Defendants have the addresses at which prior defendants Phillip Dobbs and Pierce Yount may be found and served, defendants must provide this information to the Court under seal and ex parte so that these defendants may be served with process in this matter. Conversely, defense counsel may agree to waive service for these individuals and enter an answer on their behalf.**
> (E) Defendants shall provide a description, by category and location, of all documents which are relevant to the facts giving rise to plaintiff's claim. Defendants shall, at their option, provide copies of the described documents to the plaintiff, or allow plaintiff to inspect the documents and obtain copies, with the following exceptions. Defendants need not produce individual files of prisoners who are not parties to the action. Defendants may object to the disclosure of documents by serving written objections upon the plaintiff, in lieu of producing the documents to which the objections apply.

(Doc. 69 at 1-2) (emphasis in original).

Crudup first argues that Defendants violated section (D) by failing to provide the address of former Defendant Dobbs. The Court has addressed this argument and will direct Defendant Achter to provide this information to the Court if it is known to her. As such, Crudup's request for sanctions on this basis will be denied.

Crudup also contends that Defendant Achter "allowed 90 days to elapse" before following sections (C), (D), and (E), in that she filed her initial disclosures on March 4, 2025. Crudup has attached Defendant Achter's Initial Disclosures dated March 4, 2025. (Doc. 87 at 6-7.) The Court's CMO provided that initial disclosures be provided no later than December 20, 2024. (Doc. 69 at 1.) Because Defendant Achter did not request an extension of time to provide her initial disclosures, Crudup accurately notes that the disclosures were untimely provided. Crudup's proposed sanction of default judgment against Defendant Achter, however, is unduly harsh and inappropriate. The Court will remedy any prejudice Crudup suffered due to the delay by extending the discovery and dispositive motions deadlines. Crudup fails to point to any other alleged violations of the CMO. Thus, his Motion for Entry of Default (Doc. 87) is denied.

In his most recent Motion for Sanctions filed on April 4, 2025, Crudup argues that the video provided by Defendant Farmer was edited and was incomplete. (Doc. 102.) Similarly, Crudup filed an additional motion to compel video footage from different cameras on April 7, 2025. (Doc. 103.) The Court has found that Defendant has provided Crudup with all relevant video footage in its possession. As such, these motions will be denied.

### E. Motion to Amend CMO

In his final pending motion, Crudup requests that the Court amend the CMO. (Doc. 93.) He states that he has not yet received discovery from Defendants and has not had an opportunity to investigate his case. Crudup argues that he needs the list of eyewitnesses and reports in order to assist him in prosecuting his case.

22

The Court agrees that amendment of the CMO is necessary due to the delays caused by the discovery disputes identified in this Memorandum and Order.   The Court will therefore extend the deadline for the completion of all discovery to October 23, 2025.   Any motion for summary judgment must also be filed no later than October 23, 2025.

### Instructions Regarding Future Motions

Finally, the Court instructs Crudup that any future motion to compel must comply with the Federal and Local Rules, even though he is a pro se litigant.   *See Am. Inmate Paralegal Assoc.*, 859 F.2d at 61.   While Local Rule 3.04(A) requires that the conference be conducted "in person or by telephone," if Plaintiff is unable to do so due to his incarceration, "he can write to [defense counsel] to attempt to resolve the disputes, and must do so prior to filing a motion to compel."   *Johnson*, 2008 WL 2397380, at *1.   Of note, under FRCP 26(b)(1), a party may only obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense **and is proportional to the needs of the case** (emphasis added).

Crudup must familiarize himself with the Federal Rules of Civil Procedure as well as this Court's local rules and work collegially with defense counsel.   After filing a motion with the Court, Crudup must allow Defendants *an opportunity to respond*, and then allow the Court *time to rule on the motion prior to filing an additional motion*.   **Attempts to circumvent the discovery process by filing frequent motions to compel without following these rules may result in sanctions including, but not limited to, attorney's fees associated with an inappropriate motion to compel.**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motions for subpoenas (Docs. 75, 90, 95)

23

are **denied**.

      **IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel (Doc. 76) is **denied without prejudice**.

      **IT IS FURTHER ORDERED** that Plaintiff's motion to amend the Complaint (Doc. 82) is **granted**.

      **IT IS FURTHER ORDERED** that Plaintiff's motions for sanctions (Docs. 87, 102) are **denied**.

      **IT IS FURTHER ORDERED** that Plaintiff's motion to compel (Doc. 84) is found **moot**.

      **IT IS FURTHER ORDERED** that Plaintiff's motions to compel (Docs. 86, 97, 98, 103) are **denied.**

      **IT IS FURTHER ORDERED** that Plaintiff's motion to compel (Doc. 79) is **granted in part, in that** if Defendant Achter has knowledge of an address at which Philip Dobbs can be served, ***she must provide this information to the Court under seal and ex parte immediately so that service may be effectuated***.   The motion is **denied in all other respects**.

      **IT IS FURTHER ORDERED** that Plaintiff's motion to compel (Doc. 80) is **granted in part** as follows and **denied in all other respects**:

    (1) Defendant Achter must respond to Plaintiff's Requests for Production by producing any report generated regarding the October 17, 2022 incident; or explain why such a report cannot be provided to Plaintiff or made available to him with appropriate redactions **no later than April 28, 2025**.

    (2) Defendant Achter must respond to Plaintiff's Requests for Production by producing a Medication Administration Record for October 17, 2022 that identifies the names of nurses that passed out medication in Housing Unit 2 in the morning and afternoon of October 17, 2022, but redacts the names and medical information of other offenders,

or explain why such a report cannot be provided to Plaintiff or made available to him **no later than April 28, 2025**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel (Doc. 99) is **granted in part** as follows and **denied in all other respects**:

(1) Defendant Farmer must respond to Plaintiff's Requests for Production by producing any report generated regarding the October 17, 2022 incident; or explain why such a report cannot be provided to Plaintiff or made available to him with appropriate redactions **no later than April 28, 2025**.

(2) Defendant Farmer must respond to Plaintiff's Requests for Production by producing any report received from the Office of Professional Standards regarding its investigation of the incident at issue in this case, redacting any information that could compromise security, or explain why such a report cannot be provided to Plaintiff or made available to him **no later than April 28, 2025**.

**IT IS FINALLY ORDERED** that Plaintiff's motion for extension of the deadlines in the Case Management Order (Doc. 93) is **granted as follows**:

The deadline for the completion of all discovery is extended to **October 23, 2025**.

Any motion for summary judgment must be field no later than **October 23, 2025**.

Opposition briefs shall be filed no later than **November 24, 2025**, and any reply brief may be filed no later than **December 4, 2025**.

Dated this 14th day of April, 2025.

    /s/*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE